IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID ABITBOL and RUTHY A. HARRIS, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>DATALOT, INC., KUMPARISON, LLC, SBBNET INC., and JOHN DOE CORPORATION.<br><br>    Defendants. | Civil File No. _____<br><br><br><br>**COMPLAINT – CLASS ACTION** |

**Preliminary Statement**

1.  As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (July 6, 2020).

2.  The Plaintiff David Abitbol alleges Datalot, Inc. ("Datalot") hired SBBNet Inc. ("SBBNet") to generate new customers for them and authorized Kumparison, LLC ("Kumparison") to make telemarketing calls, who sent Mr. Abitbol and others automated

telemarketing calls for purposes of promoting Datalot's lead generation services without their prior express written consent.

3. Similarly, Ruthy A. Harris alleges that Datalot hired John Doe Corporation and authorized them to send telemarketing calls, which they did through automated text messages to Ms. Harris and others.

4. Because these calls were transmitted using technology capable of generating thousands of similar calls per day, he sues on behalf of a proposed nationwide class of other persons who received similar calls.

5. A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

6. Plaintiff Abitbol is an individual residing in California.

7. Plaintiff Harris is an individual residing in New York.

8. Defendant Datalot, Inc. is a Delaware corporation with a principal place of business in Brooklyn, New York.

9. Defendant SBBnet Inc., is a Colorado corporation with a principal place of business in Evergreen, Colorado.

10. Defendant Kumparison, LLC, is a Colorado limited liability company with a principal place of business in Evergreen, Colorado.

11. Defendant John Doe Corporation is an entity engaged by Datalot to send it new customer leads.

**Jurisdiction & Venue**

12. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

13. The Court has personal jurisdiction over Datalot because is based in this District. The Court has personal jurisdiction over the remaining defendants because they contracted with, or acted as the agent for, Datalot regarding telemarketing that was designed, implemented and managed from this District. Furthermore, upon information and belief, the agreement between the co-defendants requires the parties to litigate any issues arising out of their agreement in New York.

14. Venue is proper under 28 U.S.C. § 1391(b)(1) because the Defendant is a resident of this District.

**TCPA Background**

15. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA prohibits automated telemarketing calls to cellular telephones</u>

16. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service …." *See* 47 U.S.C. § 227(b)(1)(A).

17. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

18. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

19. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14115 ¶ 165 (2003).

20. In 2012, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service."

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd 1830, 1844 (2012) (footnotes omitted).

## Factual Allegations

21. Datalot contracts with a series of companies that provides, among other products, leads for auto insurance.

22. However, Datalot's contact with potential new customers is limited, as they engage third parties, such as SBB Net and John Doe Corporation, or vendors those companies use, like Kumparison, to telemarket on their behalf to consumers.

23. Recipients of these calls, including Plaintiff, did not consent to receive them.

24. Plaintiffs are, and at all times mentioned herein were, a "person" as defined by 47 U.S.C. § 153(39).

Calls to Plaintiff Abitbol

25. Plaintiff's telephone number, (818)-916-XXXX, is registered to a cellular telephone service, which is the number he received the calls on.

26. The Plaintiff received at least 5 telemarketing calls concerning auto insurance coverage from Kumparison on behalf of Datalot as part of its relationship with SBB Net, from March 10, 2020 and March 11, 2020, including at least 3 automated telemarketing calls (2 on March 10 and 1 on March 11).

27. For each of the 3 automated telemarketing calls, when Plaintiff answered he heard a clicking sound and there was a pause until an agent joined the call.

28. The pause signifies the algorithm of the predictive dialer operating. The predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

29. The dialing system used by Kumparison also has the capacity to store telephone numbers in a database and dial them automatically with no human intervention.

30. Loading a list of telephone numbers into the dialing system and pressing a single command does this.

31. As a predictive dialer, the dialing system can also produce numbers using a sequential number generator and dial them automatically.

32. The dialing system can do this by inputting a straightforward computer command.

33. Following that command, the dialing system will sequentially dial numbers.

34. First, it would dial a number such as (555) 000-0001, then (555) 000-0002, and so on.

35. This would be done without any human intervention or further effort.

36. As a result, the system that sent automated calls to Plaintiff qualifies as an ATDS pursuant to 47 U.S.C. 227(a)(1)(A).

37. During the March 11, 2020, Plaintiff engaged the telemarketer to identify them.

38. The telemarketer ultimately transferred Plaintiff to an insurance company that Datalot has a relationship with.

39. The call was not necessitated by an emergency.

40. Plaintiff's privacy has been violated by the above-described telemarketing robocalls from, or on behalf of, Defendants. The calls were an annoying, harassing nuisance.

41. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for incoming calls. The calls occupied their cellular telephone lines, rendering them unavailable for legitimate communication.

Calls to Plaintiff

42. Plaintiff's telephone number, (716)-597-XXXX, is registered to a cellular telephone service, which is the number she received the text messages on.

43. The Plaintiff received at least three text messages from John Doe Corporation.

44. The dates text messages were received include November 10, 25 and December 2, 2020.

45. Images of two of the text messages are below:



46. The text messages are intended to promote Datalot services.

47. The website provided in the text message is operated by www.myquoteprovider.com.

48. That website is owned and operated by Josh Levy of Datalot.

7

49. Indeed, the e-mail address for the registrant of the website is jlevy@datalot.com.

50. The text messages were sent with an automatic telephone dialing system.

51. This is evidence from the use of a "short code".

52. Short codes are used by *en masse* messaging platforms in lieu of telephone numbers.

53. Short codes are used because they are pre-approved by telephone carries to send high volume messages.

54. The fact that an automatic telephone dialing system was used is also revealed by the generic non-personalized messages.

55. The calls were not necessitated by an emergency.

56. Plaintiff's privacy has been violated by the above-described telemarketing robocalls from, or on behalf of, Defendants. The calls were an annoying, harassing nuisance.

57. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for incoming calls. The calls occupied their cellular telephone lines, rendering them unavailable for legitimate communication.

**Class Action Allegations**

58. As authorized by Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of Class of all other persons or entities similarly situated throughout the United States.

59. The Class of persons Plaintiffs propose to represent is tentatively defined as:

**SBB Net and Kumparison Class:** Plaintiff Abitbol and all persons within the United States: (1) to whose cellular telephone number, SBB Net or Kumparison, or a third party

8

on their behalf, placed a telemarketing call (2) within the four years prior to the filing of the Complaint (3) using the same or substantially similar dialing equipment used to place telephone calls to Plaintiff (4) that was, or could have been, transferred to Datalot.

**John Doe Class:** Plaintiff Harris and all persons within the United States: (1) to whose cellular telephone number, John Doe Corporation, or a third party on their behalf, placed a telemarketing call (2) within the four years prior to the filing of the Complaint (3) using the same or substantially similar dialing equipment used to place telephone calls to Plaintiff (4) that was, or could have been, transferred to Datalot.

60. Excluded from the Classes are counsel, the Defendants, and any entities in which the Defendant has a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

61. The Class as defined above are identifiable through phone records, phone number databases, and business and customer records of Defendants.

62. Based on the *en masse* nature of telemarketing, the potential members of the classes likely number at least in the thousands.

63. Individual joinder of these persons is impracticable.

64. The Plaintiff Abitbol is a member of the SBB Net and Kumparison Class.

65. There are questions of law and fact common to Plaintiffs and to the proposed Class, including but not limited to the following:

    (a) whether Defendants used an ATDS to make its calls to the members of the SBB Net and Kumparison Class;

    (b) whether Defendants made calls to Plaintiffs and members of the Class without first obtaining prior express written consent to make the calls;

    (c) whether Datalot is vicariously liable for the conduct of the remaining co-defendants; and

    (d) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

9

66. Plaintiffs' claims are typical of the claims of members of the Class.

67. Plaintiffs are an adequate representative of the Class because their interests do not conflict with the interests of the Class, they will fairly and adequately protect the interests of the Class, and they are represented by counsel skilled and experienced in class actions, including TCPA class actions.

68. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents.

69. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

**FIRST CAUSE OF ACTION**

**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227(b))**
**(On Behalf of Plaintiff Abitbol and the SBB Net and Kumparison Class)**

70. Plaintiff Abitbol repeats the prior allegations of this Complaint and incorporates them by reference herein.

71. The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, with an autodialer to Plaintiff and Class members' cellular telephones.

72. The Defendants' violations were negligent, willful, or knowing.

10

73. As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

74. Plaintiffs and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making autodialed calls, except for emergency purposes, to any cellular telephone number in the future.

## SECOND CAUSE OF ACTION

**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Harris and John Doe Class)**

75. Plaintiff Harris repeats the prior allegations of this Complaint and incorporates them by reference herein.

76. The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, with an autodialer to Plaintiff and Class members' cellular telephones.

77. The Defendants' violations were negligent, willful, or knowing.

78. As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and

members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

79. Plaintiffs and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making autodialed calls, except for emergency purposes, to any cellular telephone number in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Class, pray for the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiffs as representatives of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

D. A declaration that Defendants and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making autodialed calls, except for emergency purposes, to any cellular telephone number in the future.

F. An award to Plaintiffs and the Classes of damages, as allowed by law; and

G. Orders granting such other and further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

**Plaintiffs requests a jury trial as to all claims of the complaint so triable.**

Respectfully submitted,

*/s/ Anthony I. Paronich*
PARONICH LAW, P.C.
Anthony I. Paronich
350 Lincoln St., Suite 2400
Hingham, MA 02043
617-485-0018
anthony@paronichlaw.com

KAUFMAN PA
Avi R. Kaufman
400 Northwest 26th Street
Miami, Florida 33127
305-469-5881
kaufman@kaufmanpa.com

*Attorneys for Plaintiff and proposed class*